## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Civil Action No.**

SEUNG LEE, Individually and on Behalf of
All Others Similarly Situated,

Plaintiffs,

                                               JURY TRIAL DEMANDED

v.

QUANTUM CORPORATION,
JAMES J. LERNER,
KENNETH P. GIANELLA, and
LAURA NASH,

Defendants.

---

## CLASS ACTION COMPLAINT FOR VIOLATIONS
## OF THE FEDERAL SECURITIES LAWS

---

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq.
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: philkim@rosenlegal.com

*Counsel for Plaintiff*

Plaintiff Seung Lee ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, among other things, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, public filings, wire and press releases published by and regarding Quantum Corporation ("Quantum" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Quantum Corporation securities between November 15, 2024, and August 18, 2025, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants (defined below), directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Quantum Corporation securities during the Class Period and was economically damaged thereby.

7.      Defendant Quantum Corporation is a technology company focused on data management solutions. It creates products including primary storage software and systems, secondary storage software and systems, and devices and media.

8.      Quantum Corporation is incorporated in Delaware and its principal executive offices are located at 10770 E. Briarwood Avenue, Centennial, CO 80112. The Company's common stock trades on the NASDAQ exchange under the ticker symbol "QMCO."

9.      Defendant James J. Lerner ("Lerner") served as the Company's Chief Executive Officer ("CEO"), Chairman of the Board, and President from prior to the Class Period until June 2, 2025.

10.     Defendant Kenneth P. Gianella ("Gianella") served as the Company's Chief Financial Officer ("CFO") from January 2023 until April 3, 2025.

11.    Defendant Laura K. Nash ("Nash") has served as the Company's Principal Financial Officer since August 18, 2025. She has also served as the Company's Chief Accounting Officer since June 2023.

12.    Defendants Lerner, Gianella, and Nash are collectively referred to herein as the "Individual Defendants."

13.    Each of the Individual Defendants:

(a)    directly participated in the management of the Company;

(b)    was directly involved in the day-to-day operations of the Company at the highest levels;

(c)    was privy to confidential proprietary information concerning the Company and its business and operations;

(d)    was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)    was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)    was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)    approved or ratified these statements in violation of the federal securities laws.

14.    The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

15.     The scienter of the Individual Defendants and other employees and agents of the Company are similarly imputed to Quantum Corporation under *respondeat superior* and agency principles.

16.     Defendant Quantum Corporation and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements Issued During the Class Period

17.     On November 14, 2024, Quantum Corporation filed with the SEC its Quarterly Report on Form 10-Q for the period ended September 30, 2024  (the "2Q24 Report"). Attached to the 2Q24 Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Lerner and Gianella attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

18.     The 2Q24 Report stated the following regarding the accuracy of the Company's financial statements:

> Notwithstanding the identified material weaknesses, management, including our chief executive officer and chief financial officer have determined, that the condensed consolidated financial statements included in this Form 10-Q fairly represent in all material respects the financial condition, results of operations and cash flows of the Company as of, and for, for the periods presented in accordance with U.S. generally accepted accounting principles.

19.     The statement in ¶ 18 was materially false and misleading at the time it was made because, due to the Company's improper revenue recognition practices, the condensed consolidated financial statements included in the 2Q24 Report did not fairly represent in all material respects the financial condition, results of operations, and cash flows of the Company.

20.    On February 12, 2025, Quantum Corporation filed with the SEC its Quarterly Report on Form 10-Q for the period ended December 31, 2024  (the "3Q24 Report"). Attached to the 3Q24 Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Lerner and Gianella attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

21.    The 3Q24 Report stated the following regarding the accuracy of the Company's financial statements:

> Notwithstanding the identified material weaknesses, management, including our chief executive officer and chief financial officer have determined, that the condensed consolidated financial statements included in this Form 10-Q fairly represent in all material respects the financial condition, results of operations and cash flows of the Company as of, and for, for the periods presented in accordance with U.S. generally accepted accounting principles.

22.    The statement in ¶ 21was materially false and misleading at the time it was made because due to the Company's improper revenue recognition practices, the condensed consolidated financial statements included in the 3Q24 Report did not fairly represent in all material respects the financial condition, results of operations, and cash flows of the Company.

23.    The 3Q24 Report provided the following, in pertinent part, regarding the financial statements included within the 3Q24 Report:

> The accompanying unaudited condensed consolidated financial statements of the Company have been prepared in accordance with accounting principles generally accepted in the United States of America ("GAAP") for interim financial information. All intercompany balances and transactions have been eliminated. Certain information and footnote disclosures normally included in annual financial statements have been condensed or omitted. The Company believes the disclosures made are adequate to prevent the information presented from being misleading.

24.     The statements in ¶ 23 were materially false and misleading because the Company had improperly recognized revenue in the third quarter of fiscal 2024, in violation of generally accepted accounting principles.

25.     The statements contained in ¶¶ 18, 21, and 23, were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Quantum Corporation improperly recognized revenue during the fiscal year ended March 31, 2025; (2) as a result, Quantum Corporation would need to restate its previously filed financial statements for the fiscal third quarter ended December 31, 2024; and (3) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all times.

## THE TRUTH BEGINS TO EMERGE

26.     On June 30, 2025, after the market closed, Quantum Corporation filed with the SEC a Notification of Late Filing on Form 12b-25, announcing that it would be postponing the filing of it Annual Report because it was in the process of reviewing its revenue recognition accounting practices (the "Late Filing Notice").

27.     The Late Filing Notice stated the following:

Quantum Corporation (the "Company") has determined that it is unable to file its Annual Report on Form 10-K (the "Form 10-K") for the fiscal year ended March 31, 2025 ("Fiscal 2025") by June 30, 2025, the original due date for such filing, without unreasonable effort or expense due to the circumstances described below.

The Company is reviewing its accounting related to certain revenue contracts as well as the application of standalone selling price under applicable accounting standards. The results of the review will need to be reflected in the Company's financial statements for Fiscal 2025 in the Form 10-K. The Company does not expect the current review will affect the Company's financial statements for any fiscal periods prior to Fiscal 2025.

28.    On this news, the price of Quantum Corporation stock fell $1.00 per share to close at $8.97 on July 1, 2025.

29.    Then, on August 8, 2025, after the market closed, the Company filed with the SEC a current report on Form 8-K (the "August 8 8-K") which announced, among other things, that the Company's 3Q24 financials could not be relied upon and would be restated to show a new decrease of approximately $3.9 million in revenue, and that there were deficiencies in the Company's internal control over financial reporting and the Company's disclosure controls and procedures that constituted material weaknesses as of December 31, 2024 and March 31, 2025. The August 8 8-K stated, in part, the following:

> On August 8, 2025, the Board of Directors (the "Board") of Quantum Corporation (the "Company") concluded that the Company's previously-issued unaudited interim condensed consolidated financial statements for the fiscal third quarter ended December 31, 2024 contained in its Quarterly Report on Form 10-Q (the "Non-Reliance Period"), as well as its disclosures related to such financial statements, including any reports, earnings releases, and investor presentations, and related communications issued by or on behalf of the Company with respect to the Non-Reliance Period, including management's assessment of internal control over financial reporting and disclosure controls and procedures, should no longer be relied upon. The determination by the Board was made upon the recommendation of the Audit Committee (the "Audit Committee") of the Board and after consultation with the Company's management team.

> In June 2025, the Company identified certain service and subscription revenue inconsistencies during the Non-Reliance Period, which is deferred under Accounting Standards Codification Topic 606 ("Topic 606") and recognized ratably over the term of the contract. The Company's management reviewed and updated the periods over which revenue was being recognized to ensure consistent application for all service contracts invoiced in the fiscal year ended March 31, 2025 and the results have been applied to revenue. The Company's management determined that no contracts entered into prior to fiscal year ended March 31, 2025 were impacted. The Company also determined that the standalone selling price that is used to allocate revenue under Topic 606 needed to be updated for the fiscal year ended March 31, 2025 resulting in an adjustment to revenue. As a result of these errors, the Company will restate the financial statements for the Non-Reliance Period (the "Restatement"). Subject to completion of its financial close procedures, the Company currently expects the Restatement will result in a decrease of approximately $3.9 million in revenue and a similar decrease in net loss from operations in the Non-Reliance Period.

8

In connection with the Restatement, the Audit Committee concluded, with concurrence of management, that there were deficiencies in the Company's internal control over financial reporting and the Company's disclosure controls and procedures that constituted material weaknesses as of December 31, 2024 and March 31, 2025. The Company expects to report material weaknesses related to the Company's revenue recognition. As a result of these expected material weaknesses, the Company believes that it did not maintain effective entity-level controls within the control environment to prevent or detect material misstatements. Additional deficiencies or material weaknesses in the Company's internal controls may be identified during its review. The Company's full assessment of the effectiveness of its internal control over financial reporting will be described in more detail in the Annual Report on Form 10-K for the year ended March 31, 2025 (the "2025 10-K").

30.     On this news, the price of Quantum Corporation stock fell by $0.14 per share to close at $7.43 on August 11, 2025.

31.     Finally, on August 18, 2025, after the market closed, the Company filed with the SEC a current report on Form 8-K (the "August 18 8-K").

32.     Amidst the fallout from the Company's financial restatement, the August 18 8-K disclosed, among other things, that the Company's CFO, Lewis W. Moorehead, would be resigning from his role – after holding it for less than five months.

33.     On this news, the price of Quantum Corporation stock fell by $0.61 per share to close at $6.83 on August 19, 2025.

34.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

35.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired the Company's securities publicly traded on NASDAQ during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the

officers and directors of the Company, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

36.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

37.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

38.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

39.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of the Company;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused the Company to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of the Company securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

40.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

41.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- the Company's shares met the requirements for listing, and were listed and actively traded on NASDAQ, an efficient market;

- as a public issuer, the Company filed periodic public reports;

- the Company regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period; and

- the Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

42.     Based on the foregoing, the market for the Company's securities promptly digested current information regarding the Company from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

43.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I
### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

44.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45.     This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

46.     During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

47.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

48.    Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

49.    Individual Defendants, who are the senior officers of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or any other of the Company's personnel to members of the investing public, including Plaintiff and the Class.

50.    As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

51.    Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

52.    As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

53.    By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of the Company's securities during the Class Period.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

54.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55.    During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the

conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about the Company's false financial statements.

56.     As officers of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's' financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

57.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

58.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)     declaring this action to be a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating Plaintiff's counsel as Lead Counsel;

(b)    awarding damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, together with interest thereon;

(c)    awarding Plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    awarding Plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: September 4, 2025                    **THE ROSEN LAW FIRM, P.A.**

/s/ Phillip Kim
Phillip Kim, Esq.
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: philkim@rosenlegal.com

*Counsel for Plaintiff*